**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

J&J SPORTS PRODUCTIONS, INC.,

        Plaintiff,

    v.

FRANCO CRUZ TORRES,

        Defendant.

_____/

No. C-13-5644 EMC

**ORDER DENYING PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT**

**(Docket No. 15)**

    Plaintiff J&J Sports Production, Inc. has filed suit against Defendant Franco Cruz Torres, individually and doing business as Mink Bar & Lounge.  According to J&J, Mr. Torres violated both federal and state law by intercepting and exhibiting a particular sports program to which J&J was granted exclusive distribution rights.  After Mr. Torres failed to respond to the complaint, his default was entered, *see* Docket No. 12 (notice of default), and J&J moved for a default judgment.  This is the motion currently pending before the Court.  The Court finds the matter suitable for disposition without oral argument and **VACATES** the hearing set for June 12, 2014.  The Court hereby **DENIES** the motion for default judgment.  The Court also orders J&J to show cause as to why this case should not be dismissed with prejudice as discussed *infra*.

## I.    FACTUAL & PROCEDURAL BACKGROUND

    J&J's complaint and evidence submitted in support of its motion for default judgment establish the following.

    J&J is a commercial distributor and licensor of sports programs.  *See* Compl. ¶ 16; Gagliardi Aff. ¶ 4.  J&J "was granted the exclusive nationwide commercial distribution (closed-circuit) rights

**United States District Court**
For the Northern District of California

to *Manny Pacquiao v. Juan Manuel Marquez, IV Welterweight Fight Program*."  Compl. ¶ 14; Gagliardi Aff. ¶ 4 & Ex. 1 (license agreement).  The program – which included undercard bouts – was to be broadcast on December 8, 2012.  *See* Compl. ¶ 14.  J&J entered into sublicensing agreements with various commercial entities pursuant to which it granted these entities limited sublicensing rights, more specifically, the rights to publicly exhibit the program within their respective commercial establishments.  *See* Compl. ¶ 15.

On December 8, 2012, one of J&J's investigator's, Shirley Moore, entered a commercial establishment known as Mink Bar & Lounge, which is owned or operated by Mr. Torres.  *See* Moore Aff. at 1; Compl. ¶ 7.  Ms. Moore paid no cover charge to enter the establishment.  There were three television screens inside, but none of the screens displayed the program at issue.  Ms. Moore did see, however, a "stage like platform" in the establishment and, when she walked over to that area, she saw a "laptop propped on a pedestal show[ing] [the program at issue."  Moore Aff. at 1.  According to Ms. Moore, she "noticed [a] lag time due to a low connection that was streaming the boxing match."  Moore Aff. at 1.  Eight men were gathered around the laptop.

Ms. Moore stayed at the establishment for approximately eighteen minutes.  During that time, there were approximately twelve to thirteen patrons in the establishment.  *See* Moore Aff. at 1.

Based on the above, J&J has asserted the following causes of action: (1) violation of 47 U.S.C. § 605; (2) violation of 47 U.S.C. § 553; (3) conversion; and (4) violation of California Business & Professions Code § 17200.  In the currently pending motion, J&J expressly seeks a default judgment on only the first and third causes of action.  However, implicitly, it seeks a default judgment on the second cause of action, that is, to the extent the Court might decline to find a violation of § 605.

## II.    DISCUSSION

A.    Service of Process

"In deciding whether to grant or deny a default judgment, a court must first 'assess the adequacy of the service of process on the party against whom default is requested.'"  *Joe Hand Promotions, Inc. v. Mujadidi*, No. C-11-5570 EMC, 2012 U.S. Dist. LEXIS 114585, at *3-4 (N.D. Cal. Aug. 14, 2012).  Under Federal Rule of Civil Procedure 4(e), Mr. Torres may be served

**United States District Court**
For the Northern District of California

1   pursuant to the law of California, where this Court is located.  *See* Fed. R. Civ. P. 4(e)(1).  California

2   law allows for substituted service on an individual.  *See* Cal. Code Civ. Proc. § 415.20.  For

3   individuals, before substituted service is permitted, there must be a showing that the summons and

4   complaint could not, with reasonable diligence, be personally served.  *See id.* § 415.20(b).

5        J&J has submitted declarations from a process server, testifying as to service on Mr. Torres.

6   *See* Docket No. 8 (proof of services and declaration of diligence).  Based on those declarations, the

7   Court concludes that J&J has established a prima facie case of proper service in accordance with §

8   415.20.  Accordingly, the Court now turns to the merits of the default judgment motion.

9   B.    *Eitel* Analysis

10       As noted above, Mr. Torres's default was entered after he failed to respond to the complaint.

11  After entry of a default, a court may grant a default judgment on the merits of the case.  *See* Fed. R.

12  Civ. P. 55.

13       A default judgment may not be entered, however, against an infant or incompetent person

14  unless represented in the action by a general guardian or other such representative who has

15  appeared.  *See id.*  Furthermore, a default judgment may not be entered against an individual in

16  military service until after the court appoints an attorney to represent the defendant.  *See* 50 U.S.C.

17  App. § 521.  In the instant case, J&J has provided sufficient evidence demonstrating that Mr. Torres

18  is not an infant, incompetent person, or a person in military service. See Riley Decl. ¶ 3.

19  Accordingly, the Court may consider whether a default judgment may be entered against him.

20       "The district court's decision whether to enter a default judgment is a discretionary one."

21  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Factors that a court may consider in

22  exercising that discretion include:

23          (1) the possibility of prejudice to the plaintiff, (2) the merits of
        plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)

24          the sum of money at stake in the action, (5) the possibility of a dispute
        concerning material facts, (6) whether the default was due to

25          excusable neglect, and (7) the strong policy underlying the Federal
        Rules of Civil Procedure favoring decisions on the merits.

26

27

28

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Upon entry of default, the factual allegations of the plaintiff's complaint will be taken as true, except for those relating to the amount of damages.  *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

Several of the *Eitel* factors above weigh in favor of granting J&J default judgment.  For example, J&J would be prejudiced if default judgment were not granted because it would be denied the right to judicial resolution of its claims and would likely be without other recourse for recovery. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (stating that, "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery").  Also, because Mr. Torres has not filed an answer to the complaint, there is nothing to suggest that there is a possibility of a dispute concerning material facts.  In addition, there is no indication that Mr. Torres's default was due to excusable neglect. The Court notes that not only were the summons and complaint served on Mr. Torres but also the motion for entry of default, *see* Docket No. 11 (proof of service), and the currently pending motion for default judgment. See Docket No. 15 (proof of service).

Nevertheless, there is a significant factor that weighs strongly against a default judgment, namely, the merits of J&J's substantive claim.  Whether J&J's claim is a claim for violation of § 605, violation of § 553, or conversion,[1] there is a fundamental problem with J&J's evidence in support: there is little to no evidence to show that the laptop used to display the sports program belonged to Mr. Torres or that the laptop was displaying the sports program at Mr. Torres's behest. A laptop is inherently a portable item, and therefore it could have belonged to any person in the establishment.

Presumably, it is J&J's position that one can infer the program was being displayed at Mr. Torres's behest because the laptop was on a "stage like platform" and "propped on a pedestal."

---

[1] The Court notes that there are strong reasons to limit J&J's claim to one for violation of § 553 only.  *See Mujadidi*, 2012 U.S. Dist. LEXIS 114585, at *9-10 (noting that, "[i]n general, a plaintiff may not recover under both § 605 and § 553, as it is highly unlikely that a pirate used a satellite dish [§ 605] and a cable box [§ 553] to broadcast a single program simultaneously," and that there was no evidence to support a § 605 violation; plaintiff's contention that "it should not be blamed for not being able to determine the precise means used by [defendant] to intercept the *UFC* program" was not persuasive because "there is no indication that [plaintiff] made any attempt to do so").

United States District Court

For the Northern District of California

1    Moore Aff. ¶ 1.  While such evidence gives rise to a possibility that Mr. Torres arranged for the

2    laptop to show the program, it is equally possible that a patron brought the laptop with him to the

3    establishment and positioned the laptop so that it could be viewed by his friends or other patrons.

4    Indeed, that is the more plausible explanation given that none of the three television screens in the

5    establishment was showing the sports program.  In other words, if Mr. Torres truly wanted to

6    enhance his profits by displaying the sports program, he would have displayed the program on one

7    of the television screens or at least on a screen larger than or more easily viewable than a laptop.

8         Moreover, if Mr. Torres wanted to enhance his profits, he would have, *e.g.*, advertised the

9    showing of the sports program, imposed a cover charge, or increased the price of food or drinks.  *See*

10   *Mujadidi*, 2012 U.S. Dist. LEXIS 114585, at *13-14 n.1 (noting that factors such as advertising and

11   food and drink prices "are appropriate for consideration as they are geared toward determining to

12   what extent a defendant may have profited from its piracy"); *see also Kingvision Pay-Per-View, Ltd.*

13   *v. Backman*, 102 F. Supp. 2d 1196, 1198 n.2 (N.D. Cal. 2000) (Henderson, J.) (noting that "[a]n

14   establishment that does not promote itself by advertising the Program, does not assess a cover

15   charge, and does not charge a special premium for food and drinks hardly seems like the willful

16   perpetrators envisioned by the statute's framers").  J&J has failed to offer any such evidence in

17   support of its claim.  Indeed, J&J's investigator expressly states that she was not required to pay a

18   cover charge.  *See* Moore Aff. at 1.

19        The possibility that the laptop was not being displayed at the behest of Mr. Torres should

20   have been obvious to J&J's investigator, as well as J&J itself once it was given the information by

21   the investigator.  But the investigator and J&J did nothing further to investigate this possibility.

22   Without any additional evidence, the Court concludes that the merits of J&J's substantive claim are

23   extremely weak, and therefore default judgment is not appropriate.

24   ///

25   ///

26   ///

27   ///

28   ///

### III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court denies J&J's motion for default judgment.  Given that the Court is denying J&J's motion, is it not clear how this case should or could proceed. Accordingly, the Court hereby orders J&J to show cause as to why this case should not be dismissed with prejudice.  J&J's response to the order to show cause shall be filed by **June 17, 2014.**

This order disposes of Docket No. 15.

IT IS SO ORDERED.

Dated:  June 3, 2014

_____
EDWARD M. CHEN
United States District Judge

**United States District Court**
For the Northern District of California